```
                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION


DIANE R. LEVIN, as next           §
friend of Lindsay Brigit          §
K. Levin, a minor, on             §
behalf of herself and             §
other members of the              §
general public similarly          §
situated,                         §
                                  §
          Plaintiff,              §       CIVIL ACTION NO. H-07-1330
                                  §
v.                                §
                                  §
MINNESOTA LIFE INSURANCE          §
COMPANY, a wholly owned           §
subsidiary of Securian            §
Financial Group f/k/a             §
The Minnesota Mutual Life         §
Insurance Company,                §
                                  §
          Defendant.              §
```

MEMORANDUM AND ORDER

Pending are Defendant Minnesota Life Insurance Company's Motion to Dismiss Plaintiff's Class Action Complaint (Document No. 22), and Plaintiff Diane R. Levin's, as next friend of Lindsay Brigit K. Levin, Motion for Class Certification (Document No. 30). After carefully considering the motions, responses, reply, and the applicable law, the Court concludes as follows.

I.  Background

Diane Levin ("Mrs. Levin"), as next-friend of her daughter Lindsay Brigit K. Levin ("Lindsay"), brought this suit on behalf of a putative class of all persons who purchased term or permanent life insurance policies from Defendant Minnesota Life Insurance Company ("Defendant"), whose policies are either currently in force or were in-force after the first payment of policy premiums or dividends, and who have suffered damages due to Defendant's alleged deceptive policy marketing, sales, servicing, or administration practices.  Document No. 1 at 1.  In particular, Alan Levin ("Mr. Levin"), through an agent of Defendant, purchased an adjustable life insurance policy (the "Policy") in 1991 with a face amount of $1 million on the life of his daughter, Lindsay, who was then less than eight months old.  Document No. 1 at 23, ex. A; Document No. 23 ex. 1 at 1A.  The Policy named Mr. Levin as the owner, and Mr. and Mrs. Levin as the sole beneficiaries.  Document No. 1 ex. A; Document No. 23 ex. 1 at 1A.

According to the Complaint, Defendant had disseminated through its agents, including the agent from whom Mr. Levin purchased the Policy, documents representing that its permanent life insurance policies would eventually become self-sustaining, because the dividends earned by the policies would eventually be sufficient to cover the entire annual premium.  *See* Document No. 1 at 8, 24-25.  However, Defendant allegedly knew or recklessly disregarded that

the dividend scales and interest rates disclosed in those documents were artificially inflated, that the dividend rates would actually decrease over time, and the out-of-pocket premiums would not in fact vanish.  Id. at 7-8, 24-25.  Defendant allegedly failed to disclose that policyholders would likely need to pay additional amounts adequately to fund the policies and to avoid lapse of the policies or reduction of non-forfeiture benefits.  "Plaintiff [i.e., Lindsay, as represented by Mrs. Levin] and Mr. Levin" allegedly relied on Defendant's misrepresentations when purchasing the Policy.  Id. at 26.

　　The Complaint also alleges that Defendant secretly, knowingly, and intentionally based the dividends and costs for juvenile life insurance policies on smoker rates, even though the insureds were nonsmoking infants and children when the policies were issued, and the policy applications expressly stated that the insureds did not smoke.  Id. at 4, 16.  This classification allegedly affected the applicable mortality assumptions, resulting in higher insurance costs and lower dividends, and was neither disclosed to Defendant's agents, nor to purchasers of juvenile life insurance policies.  Id. at 17-18, 20.  Defendant also purportedly failed to disclose that it requires these policies to be upgraded when the insured reaches majority in order for the preferred non-smoker rates and dividends to apply and that, even if the upgrade were requested, that Defendant would not restore the policyholders to the same position

3

that they would have enjoyed had the policies been issued properly at the non-smoking rate.  Id. at 21-23.  Lindsay is claimed to be "a victim" of this scheme, in that she has never smoked, the application filled out by Mr. Levin reflects that she does not smoke, and yet Defendant allegedly failed to apply a non-smoker risk classification to the Policy, disclosing only that Lindsay was to receive a "standard juvenile" premium rating.  Id. at 26-27.

Mrs. Levin, on behalf of her daughter, filed this Class Action Complaint on April 19, 2007, asserting claims for (1) breach of express or implied contract; (2) breach of fiduciary duty; (3) constructive fraud; (4) common-law fraud; (5) fraudulent inducement; (6) unjust enrichment; (7) violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*; (8) negligence; (9) negligent misrepresentation; (10) reformation; (11) violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code § 17.41 *et seq.*; and (12) violation of Chapter 541 of the Texas Insurance Code.  Id. at 33-54.  Defendant now moves to dismiss, contending *inter alia* that Lindsay has no standing to assert any of her claims.  Document No. 23 at 18-23.

I.  <u>Standard of Review</u>[1]

Under Federal Rule of Civil Procedure 12(b)(1), a party can seek dismissal of an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The question of subject matter jurisdiction is for the court to decide even if the question hinges on legal or factual determinations. *See* <u>Ramming v. United States</u>, 281 F.3d 158, 161 (5th Cir. 2001). The Fifth Circuit distinguishes between "facial" and "factual" attacks to subject matter jurisdiction. <u>Paterson v. Weinberger</u>, 644 F.2d 521, 523 (5th Cir. 1981); *see also* <u>Irwin v. Veterans Admin.</u>, 874 F.2d 1092, 1096 (5th Cir. 1989). A facial attack consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenging the court's jurisdiction based solely on the pleadings. *See* <u>Lawrence v. Dunbar</u>, 919 F.2d 1525, 1529 (11th Cir. 1990); <u>Paterson</u>, 644 F.2d at 523. When presented with a facial challenge to subject matter jurisdiction, the court must accept all allegations in the complaint as true. *See* <u>Garcia v. Copenhaver, Bell & Assocs.</u>,

---

[1] Though brought as a motion to dismiss pursuant to Rule 12(b)(6), Defendant's challenge to the Complaint on standing grounds implicates the Court's subject matter jurisdiction. *See* <u>McCall v. Dretke</u>, 390 F.3d 358, 361 (5th Cir. 2004). Defendant's arguments pertaining to standing are therefore analyzed under the standards applicable to Rule 12(b)(1). *Cf.* <u>La. Envtl. Action Network v. LWS Mgmt. Co.</u>, Civil Action No. 07-0595, 2007 WL 2491360, at *1 n.1 (W.D. La. Aug. 14, 2007) (analyzing a 12(b)(6) motion to dismiss based on lack of standing and mootness under Rule 12(b)(1)).

M.D.'s, P.A., 104 F.3d 1256, 1261 (11th Cir. 1997); Paterson, 644 F.2d at 523.

A factual attack, on the other hand, involves submission of evidence extrinsic to the complaint. Garcia, 104 F.3d at 1261; Paterson, 644 F.2d at 523. In response to a factual attack, the "plaintiff is also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." Paterson, 644 F.2d at 523; *see also* Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989). So long as the jurisdictional issue does not implicate the merits of the plaintiff's claims, no presumption of truth attaches to the allegations in the complaint, and the court has broad discretion to weigh the evidence and resolve any disputes of fact. *See* Garcia, 104 F.3d at 1261; Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981). In sum, a court evaluating a motion to dismiss pursuant to Rule 12(b)(1) may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. Hartford Ins. Group v. Lou-Con Inc., 293 F.3d 908, 910 (5th Cir. 2002).

III.  Discussion

The parties dispute whether Lindsay, a non-purchaser, non-owner, non-beneficiary of the Policy underlying the Complaint, has standing to assert this action individually, or as a representative of a putative class of purchasers of similar life insurance policies from Defendant.  Article III, Section 2 of the Constitution limits the jurisdiction of federal courts to "cases" or "controversies."  *See* McConnell v. Fed. Election Comm'n, 124 S. Ct. 619, 707 (2003).  The requirement that a litigant must have standing to invoke the power of a federal court is "one of the controlling elements in the definition of a case or controversy under Article III . . . ."  Hein v. Freedom From Religion Found., Inc., 127 S. Ct. 2553, 2562 (2007) (internal quotation marks omitted); *see also* Allen v. Wright, 104 S. Ct. 3315, 3324 (1984) (describing standing as "perhaps the most important" of the Article III doctrines).  "To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Friends of the Earth, Inc. v. Laidlaw Env. Servs. (TOC), Inc., 120 S. Ct. 693, 704 (2000); *see also* Allstate Ins. Co. v. Abbott, 495 F.3d 151, 158 & n.13 (5th Cir. 2007)

(quoting Lujan v. Defenders of Wildlife, 112 S. Ct. 2130, 2136 (1992)).  Thus, a plaintiff may not "merely 'champion the rights of another,'" Audler v. CBC Innovis, Inc., 519 F.3d 239, 248 (5th Cir. 2008) (quoting Scottsdale Ins. Co. v. Knox Park Constr., Inc., 488 F.3d 680, 684 (5th Cir. 2007), but must instead have a "'personal stake' in the alleged dispute" by showing "that the alleged injury suffered is particularized as to [her]," Raines v. Byrd, 117 S. Ct. 2312, 2317 (1997).

Because Defendant's arguments relating to standing rely in part on evidence extrinsic to the Complaint such as the application for and terms of the Policy, its motion to dismiss presents a factual attack to jurisdiction.  The conclusory allegations in the Complaint that Lindsay sustained "injury" or was "harmed" as a result of Defendant's alleged misrepresentations or omissions, *see* Document No. 1 at 37 ¶ 108, 40 ¶ 121, 42 ¶ 135, 44 ¶ 144, 46 ¶ 153, 49 ¶ 169, are therefore not entitled to a presumption of truth. *See, e.g.*, Evans v. Tubbe, 657 F.2d 661, 663 (5th Cir. 1981) (holding that the defendant's factual, rather than facial attack on subject matter jurisdiction, means that "no presumptive truthfulness attaches to the plaintiffs' jurisdictional allegations").  Mrs. Levin, as Lindsay's next friend, acts merely in a representative capacity and Lindsay, not she, is the real party in interest.  *See* FED. R. CIV. P. 17(c)(2) (permitting a next friend to sue on behalf of a minor or incompetent who does not have a duly

appointed representative); D.B. v. Mass, No. Civ.A.SA-05-CA0239XR, 2005 WL 2896460, *1 (W.D. Tex. Nov. 1, 2005) (explaining that a minor represented by a "next friend" remains the real party in interest); Howell v. Fifth Court of Appeals, 689 S.W.2d 396, 398 (Tex. 1985) (same). In response to Defendant's factual attack, Mrs. Levin, as Lindsay's representative, must present evidence establishing by a preponderance of the evidence that Lindsay has standing to assert her claims against Defendant. *See, e.g.*, Paterson, 644 F.2d at 523.

Defendant's evidence reflects that at the time Mr. Levin purchased the Policy, when suit was filed, and through the present, Mr. Levin has been and remains the owner of the Policy, and Lindsay, the minor insured. Mrs. Levin has neither alleged nor shown that Lindsay has paid any premiums or exercised any rights under the Policy. In fact, the Complaint alleges that Mr. Levin, not Lindsay, modified the face amount of the Policy at least once since its inception. *See* Document No. 1 at 24 ¶ 69. Therefore, whatever alleged injuries resulted from Defendant's conduct, such as higher premiums or reduced dividends, were not sustained by Lindsay.

Mrs. Levin contends that Defendant's alleged wrongful actions have forced Lindsay's parents to pay additional premiums, thus reducing the funds that might otherwise have been spent for Lindsay's benefit. Id. at 11. This alleged detriment turns on the

actions of Lindsay's parents--neither of whom is a party to this litigation on his or her own behalf--and is too attenuated and uncertain to satisfy the requirement of a direct injury to Lindsay fairly traceable to the actions of Defendant. *See, e.g.*, Torres v. Shalala, 48 F.3d 887, 893 (5th Cir. 1995) (explaining that the injury component of standing "must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court'" (quoting Gilbert v. Shalala, 45 F.3d 1391, 1393 (10th Cir. 1995))).

According to Mrs. Levin, Lindsay nonetheless has standing to assert rights under the Policy as a third-party beneficiary, because Mr. Levin "was acting on behalf of and for the benefit of his daughter Lindsay" when he purchased the Policy from Defendant. Document No. 31 at 7-8. Under Texas law, "[a] third party may recover on a contract made between other parties only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002). An incidental benefit is insufficient; rather, the *written agreement* must clearly and fully express an intent to confer a direct benefit on a third party. *See* id.; MCI Telecommc'ns Corp. v. Tex. Utilities Elec. Co., 995 S.W.2d 647, 651 (Tex. 1999) ("The intention to contract or confer a direct benefit

10

to a third party must be clearly and fully spelled out or enforcement by the third party must be denied."). Texas law therefore presumes "that parties contracted for themselves unless it 'clearly appears' that they intended a third party to benefit from the contract." MCI Telecommc'ns Corp., 995 S.W.2d at 651; Marine Creek Partners, Ltd. v. Caldwell, 926 S.W.2d 793, 795 (Tex. App.--Ft. Worth, 1996, no writ) (observing that "[t]here is a presumption against third-party beneficiary agreements"). Whether such an intent exists turns on an examination of the entire agreement, "giv[ing] effect to all the contract's provisions so that none are rendered meaningless." Stine, 80 S.W.3d at 589. "If there is any reasonable doubt as to the intent of the contracting parties to confer a direct benefit on a third party, then the third-party beneficiary claim must fail." First Union Nat'l Bank v. Richmont Capital Partners I, L.P., 168 S.W.3d 917, 929 (Tex. App.--Dallas 2005, no pet.).

Regardless of whether Mr. Levin subjectively intended to benefit his daughter by purchasing the Policy, Lindsay's ability to enforce the Policy depends on whether the Policy language reflects an intent to confer benefits upon her. *See, e.g.*, Marine Creek Partners, Ltd., 926 S.W.2d at 795 ("[T]he party claiming third-party beneficiary status will succeed or fail according to the terms of the contract."). An "Ownership Endorsement--Juvenile Policy" ("Juvenile Policy Endorsement") to the Policy provides:

11

> Notwithstanding any contrary policy provisions, *every benefit privilege, or right granted the Insured* by the terms of this policy *shall be payable to or exercised by the Policyowner* designated in the application. *No notice to or consent of the Insured shall be required for any transaction between the Company and the Policyowner* with respect to this policy, including exercise of the right to change the beneficiary and of the right to transfer the rights and title evidenced by this endorsement . . . .
>
> At any time *after the Insured has attained legal age*, the *Policyowner may relinquish the rights* granted by the preceding paragraph by filing with the Company a written request accompanied by this policy for endorsement; and after such endorsement, the Company shall deal directly with the Insured as though this contract originally had been made with the Insured.

Id. at 23 (emphasis added). As stated in this endorsement, all rights to receive benefits, or to exercise rights such as transferring ownership of or changing beneficiaries under the Policy belong to the policyowner, here, Mr. Levin. Although the Policy *allows* for transfer of ownership from Mr. Levin to Lindsay when she reaches the age of 18, nothing in the Policy *requires* him to do so or makes such a transfer automatic upon her attaining legal age. So long as Mr. Levin is the policyowner, the contract remains between him and Defendant, with Lindsay serving as the measuring life but receiving no benefits and possessing no rights under the Policy. The Policy therefore does not reflect any intent to confer a direct benefit on Lindsay. Accordingly, Lindsay, a non-owner, non-beneficiary with no interest clearly and expressly stated in

Policy, is not a third party beneficiary with standing to enforce rights under the Policy.

Mrs. Levin also repeatedly asserts that Mr. Levin intends to transfer ownership of the Policy to Lindsay when she turns 18 on September 30, 2008, at which time the rights and benefits of the Policy would belong to her, and the injury to Lindsay will accrue. *See* Document No. 31 at 2, 9, 10. This assertion is wholly unsubstantiated with affidavit or other evidence, and, since Mr. Levin has no obligation to transfer the Policy, amounts to nothing more than a present expectation or hypothetical circumstance insufficient to satisfy the requirement of a concrete and imminent injury. More importantly, "standing is determined as of the time that suit is filed." Energy Mgmt. Corp. v. City of Shreveport, 397 F.3d 297, 301 n.3 (5th Cir. 2005) (citing Pederson v. La. State Univ., 213 F.3d 858, 870 (5th Cir. 2000)). Lindsay's assumption of ownership of the Policy upon turning 18, even if that should happen, would not inflict upon her an actual injury resulting from Defendant's alleged conduct as of the date when suit was filed more than a year ago. *Cf.* Pluet v. Frasier, 355 F.3d 381, 385-86 & n.3 (5th Cir. 2004) (rejecting plaintiff's claimed standing as the representative of the decedent's estate, when she did not move to

13

be named the estate's administrator until about eight months after filing suit).[2]

In sum, Mrs. Levin has failed to meet her burden to demonstrate that Lindsay suffered a concrete injury fairly traceable to the actions of Defendant that would likely be redressed if relief were granted. Lindsay's lack of standing also precludes her from representing a class. *See* Lewis v. Casey, 116 S. Ct. 2174, 2183 (1996) ("'[N]amed plaintiffs who represent a class "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."'" (quoting Simon v. E. Ky. Welfare Rights Org., 96 S. Ct. 1917, 1925 n.20 (1976) (quoting Warth v. Seldin, 95 S. Ct. 2197, 2207 (1975)))). When, as here, the plaintiff has no standing individually, there is no case or controversy, and the suit must be dismissed. *See* Brown v. Sibley, 650 F.2d 760, 771 (5th Cir. 1981).

Finally, Mrs. Levin requests in the alternative that the Court grant her "leave to substitute a new plaintiff and class representative." Document No. 31 at 13. Because Lindsay, as

---

[2] Similarly, Mrs. Levin's alternative request to continue the trial setting until Lindsay reaches the age of majority is predicated on an erroneous assumption that the absence of standing can be cured by events occurring after the filing of suit. Document No. 31 at 12-13. As discussed above, even if Lindsay were later to assume ownership of the Policy, her lack of standing when suit was filed on April 19, 2007, would nonetheless preclude her claims. *See* Energy Mgmt. Corp., 397 F.3d at 302 n.3. Mrs. Levin's request to continue is therefore DENIED.

represented by Mrs. Levin, has no standing to assert any claim against Defendant, Mrs. Levin also lacks standing to amend the complaint. *See* Summit Office Park, Inc. v. U.S. Steel Corp., 639 F.2d 1278, 1282-83 (5th Cir. 1981) ("Since Summit had no standing to assert a claim, it was without power to amend the complaint so as to initiate a new lawsuit with new plaintiffs and a new cause of action."); Jackson v. Fidelity Nat'l Title Ins. Co., 2008 WL 508489, at *3 (N.D. Tex. Feb. 26, 2008) ("[W]ithout standing to bring suit, the plaintiff lacks the power to bring in a new plaintiff and continue the litigation."). A plaintiff cannot rely on the amendment procedure under Fed. R. Civ. P. 15 "to substitute a new plaintiff in order to cure the lack of subject matter jurisdiction." Fed. Recovery Servs., Inc. v. United States, 72 F.3d 447, 453 (5th Cir. 1995); *see also* Aetna Cas. & Sur. Co. v. Hillman, 796 F.2d 770, 774 (5th Cir. 1986) (citing Summit Office Park for the proposition that "where a plaintiff never had standing to assert a claim against the defendant, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs, a new class, or a new cause of action"). Accordingly, Mrs. Levin's request for leave to amend the Complaint and substitute a new class representative is denied, and the Complaint will be dismissed for lack of subject matter jurisdiction. It is therefore unnecessary to reach Defendant's arguments for dismissal on the merits. *See, e.g.*, Steel Co. v. Citizens for a Better Env't, 118 S. Ct. 1003,

1013 (1998) (jurisdictional issues must be resolved before considering the merits of the claims). Mrs. Levin's motion for class certification is also denied as moot.

## IV. Order

Accordingly, it is

ORDERED that Defendant Minnesota Life Insurance Company's Motion to Dismiss Plaintiff's Class Action Complaint (Document No. 22) is GRANTED, and the claims of Plaintiff Diane R. Levin, as next friend of Lindsay Brigit K. Levin, are DISMISSED for lack of subject matter jurisdiction. It is further ORDERED that Plaintiff's motion for class certification (Document No. 30) is DENIED as MOOT.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 7th day of July, 2008.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE